STEVENSON, Judge.
Appellant, Carolyn Springer, appeals an order granting the motion of defendant, Blue Cross & Blue Shield of Western New York, Inc. (“Blue Cross of New York”), to dismiss for lack of personal jurisdiction. We reverse, as we conclude that Blue Cross’ issuance of an amended insurance policy to appellant in Florida and subsequent collection of premiums from this state is a sufficient manifestation of Blue Cross’ voluntary availment of business opportunity in Florida to subject it to suit in this forum.
Blue Cross of New York is a foreign company not authorized to conduct insurance business in Florida. In 1978, when appellant lived in New York, she entered into an insurance contract with Blue Cross of New York. In 1984, appellant moved to South Florida. For the following decade, Blue Cross of New York sent appellant’s premium bill to her Florida residence, accepted appellant’s payments from that address, and paid various claims of appellant’s health care providers in this state.
Since the late 1970’s, Blue Cross had sought to automatically transfer those insureds who emigrated from New York to insurance companies in the insureds’ new localities, but New York’s Superintendent of Insurance construed Blue Cross’ standard contract to preclude such transfers.[1] Only in 1994 did the Superintendent approve language in Blue Cross’ standard insurance contract which would allow it to terminate the policy of an insured who leaves its operating area and transfer coverage to a Blue Cross company in the insured’s new location if similar coverage exists there. In August of 1994, Blue Cross issued an amended policy, which included this newly-approved language, to appellant at her Florida residence.
In November of 1995, appellant was notified that she had been transferred to Blue Cross & Blue Shield of Florida, Inc. (“Blue Cross of Florida”). Appellant then filed a multi-count complaint against both Blue Cross of New York and Blue Cross of Florida, based on allegations that her policy with Blue Cross of Florida provided less coverage at a higher premium than did her policy with Blue Cross of New York. The trial court granted Blue Cross of New York’s motion to dismiss for lack of personal jurisdiction. This appeal followed.
To establish a Florida court’s in per-sonam jurisdiction over a defendant, the plaintiff must show (1) the applicability of Florida’s long-arm statute; and (2) that the defendant has “minimum contacts” with this state. Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989). The parties in this case agree that the applicable long-arm statute is Florida’s Unauthorized Insurer’s Pro- *946 cess Law (UIPL), which subjects an “unauthorized foreign insurer” to suit in Florida if it performs any of the following:
(1) The issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein;
(2) The solicitation of applications for such contracts;
(3) The collection of premiums, membership fees, assessments, or other considerations for such contracts; or
(4) Any other transaction of insurance.
§ 626.906, Fla. Stat. (1995).
Purposeful availment of Florida business opportunities from 1984 to 1994
The UIPL does not afford a basis for in personam jurisdiction independent of the due process requirement of minimum contacts with the forum state. Bookman v. KAH Incorporated, Inc., 614 So.2d 1180, 1182 (Fla. 1st DCA 1993). Thus, in addition to satisfying the UIPL, the non-resident, unauthorized insurer’s activities in Florida must constitute sufficient contacts with this state such that maintenance of the lawsuit does not offend “traditional notions of fair play and substantial justice.” See International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This “minimum contacts” analysis involves a consideration of whether “the defendant’s conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.” World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 296, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). However, the minimum contacts must have been “purposefully established.” Asahi Metal Indus. Co. v. Superior Court of California, Solano County, 480 U.S. 102, 108, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987)(emphasis added). Accordingly, the acts described in the UIPL must have been voluntarily undertaken by the unauthorized insurer, rather than compelled by law, in order to subject the insurer to suit in this state. Bookman, 614 So.2d at 1183. Thus, in Bookman, the court found personal jurisdiction lacking, even though the defendant insurer may have issued a renewal policy in Florida, since the correspondence was not voluntary but was compelled by COBRA, a federal law. Id.
Blue Cross of New York argues, and the lower court agreed, that Blue Cross was similarly compelled by law to maintain its policy with appellant after she left New York in 1984. However, it is not as clear in this case as it was in Bookman whether the insurer was compelled by law — or by its own standard insurance contract — to continue insuring appellant after her relocation to Florida. Although New York’s Superintendent of Insurance must pre-approve the language of all insurance contracts, we cannot discern from the record whether, and to what extent, Blue Cross was forced by New York law in 1978 to utilize the particular language that it did in drafting appellant’s contract — language that the Superintendent later construed, contrary to Blue Cross’ understanding of the policy, as prohibiting it from terminating appellant’s contract upon her departure from New York.
The 1994 amended contract
We need not decide whether Blue Cross’ continuation of the 1978 contractual relationship until 1994 — which included ten years of receiving premiums from Florida and payment to Florida health care providers — was “voluntary” or “compelled,” since we hold that Blue Cross’ issuance of an amended policy to appellant in 1994 and subsequent collection of premiums pursuant to it, constitute activities subjecting Blue Cross to suit in Florida under the UIPL. See § 626.906(1) & (3), Fla. Stat. (1995); Citizens Ins. Co. v. Bowman, 525 So.2d 991 (Fla. 3d DCA 1988)(finding personal jurisdiction where the unauthorized insurer issued an amended policy to the insured after she moved to Florida); First of Georgia Ins. Co. v. Lloyd, 557 So.2d 138 (Fla. 3d DCA 1990)(finding personal jurisdiction where the unauthorized insurer collected an amended premium from an insured whom the company knew had relocated to Florida prior to the amendment).
Had Blue Cross issued its amended contract exclusively for the purpose of implementing the newly-authorized termination clause, we might be inclined to rule that the *947 1994 issuance was not an activity manifesting a purposeful availment of business opportunity in Florida, but just the opposite — an attempt by Blue Cross to extricate itself from business dealings in this state. However, the facts belie the suggestion that the termination of appellant’s policy was Blue Cross’ only goal in issuing the amended policy. In his deposition, Thomas Fortunato, the Vice President of Blue Cross of New York, testified that the 1994 policy was not issued solely because of the new termination clause, but that “several other changes” probably also prompted the issuance.
More significantly, after issuing the amended policy in August of 1994, Blue Cross of New York insured appellant under this new policy for the following 15 months, and collected her quarterly premium throughout this period, before transferring appellant’s policy to Blue Cross of Florida in November of 1995. Under Lloyd and Bowman, Blue Cross’ 1994 issuance of its amended policy to appellant in Florida, and subsequent collection of premiums, are sufficient contacts with Florida to subject it to suit in this forum under the UIPL. We further conclude that these activities, against the backdrop of Blue Cross’ ten year history of insuring appellant in Florida and covering her claims in this state, satisfy the constitutional requirement of minimum contacts; it cannot be said that Blue Cross could not reasonably anticipate being haled into court in Florida, or that requiring it to defend this lawsuit in this forum would offend traditional notions of fair play and substantial justice.
REVERSED.
GUNTHER and PARIENTE, JJ., concur.

. In New York, the Superintendent of Insurance must pre-approve the language of insurance contracts. N.Y. Ins. Law § 4308(a) (McKinney 1996). The Superintendent has been granted "broad power” to interpret, clarify, and implement the legislative policy underlying New York’s insurance laws. See Blue Cross & Blue Shield of Cent. N.Y., Inc. v. McCall, 89 N.Y.2d 160, 652 N.Y.S.2d 218, 674 N.E.2d 1124 (1996).