[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
06/10/99
THOMAS K. KAHN
CLERK

No. 97-5926

D.C. Docket No. 97-8486-CV-JAL

ALVERA WALTER, Individually and as Trustee
of the Estate of Charles Walter, deceased,

Plaintiff-Appellant,

versus

BLUE CROSS & BLUE SHIELD UNITED
OF WISCONSIN, a corporation,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Florida

**(June 10, 1999)**

Before BIRCH and CARNES, Circuit Judges, and MILLS*, Senior District Judge.

CARNES, Circuit Judge:

---

* Honorable Richard Mills, Senior U.S. District Judge for the Central District of Illinois, sitting by designation.

Plaintiff Alvera Walter sued defendant Blue Cross & Blue Shield United of Wisconsin (herein "Blue Cross" or "Blue Cross of Wisconsin") in Florida state court for breach of contract. Blue Cross removed the case to federal district court and filed a motion to dismiss for lack of personal jurisdiction. Walter failed to respond to that motion in a timely manner. Solely because of that failure, the district court granted the motion to dismiss without reaching the underlying jurisdictional question. Walter then moved to set aside the dismissal and filed a belated opposition to the motion to dismiss on jurisdictional grounds. The court denied Walter's motion to set aside its order of dismissal.

For the reasons set forth below, we hold that the district court abused its discretion by denying Walter's motion to set aside its dismissal order based upon the untimeliness of her response. Nevertheless, we also hold that the action is due to be dismissed on other grounds, because Walter has failed to establish that the district court had personal jurisdiction over Blue Cross.

## I. BACKGROUND

In 1975, Charles Walter, a Wisconsin state employee, and his wife, Alvera, began to receive health insurance coverage from the State of Wisconsin's self-funded group health insurance policy. Blue Cross of Wisconsin acted as third-party

2

administrator of this health plan. Sometime during the 1970s, the Walters moved from Wisconsin to Florida but retained their health insurance coverage through the State of Wisconsin's plan. The Walters sent their premium payments from Florida to Blue Cross of Wisconsin, which, for its part, paid claims made by Florida health care providers. Under the terms of the Third Party Administrator Agreement, Blue Cross could not terminate the Walters' policy because they had moved to Florida.

On May 15, 1997, Alvera Walter, both individually and as trustee of the estate of her deceased husband, sued Blue Cross of Wisconsin in the state courts of Florida, alleging that the company had breached its health insurance policy with the Walters by denying payment on some claims. On June 25, 1997, Blue Cross removed the case to federal court. Walter subsequently filed a motion to remand.

On July 2, 1997, Blue Cross of Wisconsin filed a motion to dismiss the complaint for lack of personal jurisdiction, arguing that it had no contacts with the state of Florida. Walter's response to the motion to dismiss was due on July 18. On July 14, Walter moved for a 20-day extension of time to file her response, and on August 19, the district court granted the requested extension. One month after that, on September 22, 1997, the district court denied Walter's motion to remand the case. Sometime after Walter's attorney received the order denying the motion to remand, she realized that Blue Cross of Wisconsin's motion to dismiss

3

was still pending, but she did not file her response immediately. On October 6, having received no response from Walter, the district court entered an order granting Blue Cross's motion to dismiss. The order stated:

> A party opposing a motion must serve a response on the moving party within ten days of being served with the motion, and must file a copy of its response with the Court within three days of serving the response. See S.D. Fla. L.R. 7.1C; S.D. Fla. L.R. 5.1B. Failure to do so is a basis for granting the motion. S.D. Fla. 7.1C. Defendant filed its motion to dismiss on June 2, 1997. On August 19, 1997, this Court granted Plaintiff a twenty day extension of time to respond. To date, Plaintiff has not filed a response to that motion with this Court. Accordingly, it is hereby...ORDERED AND ADJUDGED that Defendant's motion to dismiss be GRANTED. The Clerk of Court is directed to close this case.

On October 8, which was two days after the dismissal, Walter filed her response to Blue Cross of Wisconsin's motion to dismiss. A week later, on October 16, Walter moved the court, under Federal Rule of Civil Procedure 60(b), to set aside its order granting the motion to dismiss, explaining that her counsel had received a copy of the court's order on October 8 and that "during the period of time when the Court granted the Plaintiff's...extension to respond to the Defendant's Motion to Dismiss, the undersigned counsel's former secretary had just terminated her position with this office and through some inadvertence in filing, never diaried and docketed for a timely response to be filed to the Motion to Dismiss." Although Walter admitted that her counsel "learned" of the pending

4

motion to dismiss when the court denied her motion to remand in late September, she stated: "This motion has been brought in good faith and the undersigned asserts that there is no prejudice that will arise to the Defendant by setting aside the Order Granting Defendant's Motion to Dismiss." On November 14, the district court denied Walter's motion to set aside its order. Walter then filed this appeal.

On January 26, 1999, while this appeal was still pending, Walter sued Blue Cross of Wisconsin in Wisconsin state court, alleging the same breach of contract claims. In her Wisconsin complaint, Walter stated that she was a Wisconsin resident.[2] On March 2, 1999, Blue Cross filed a motion to dismiss the Wisconsin complaint. Walter subsequently moved to stay her Wisconsin lawsuit, pending resolution of this case.

## II. STANDARD OF REVIEW

We review the district court's denial of a motion to set aside a final judgment for an abuse of discretion. See Cheney v. Anchor Glass Container Corp., 71 F.3d 848, 849 n.2 (11th Cir. 1996).

## III. DISCUSSION

### A. DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DENYING WALTER'S MOTION TO SET ASIDE

---

[2] At oral argument, Walter's counsel explained that Walter has returned to Wisconsin to live in a nursing home.

ITS ORDER OF DISMISSAL?

Walter argues that the district court abused its discretion in denying her motion to set aside its order of dismissal, because her lawyer engaged in excusable neglect that did not prejudice Blue Cross of Wisconsin. Blue Cross, on the other hand, emphasizes the length of the delay and the fact that Walter's counsel received a reminder of the pending motion to dismiss two weeks before she filed her response. We conclude that the district court did abuse its discretion, because Walter's counsel engaged in excusable neglect.

The Supreme Court and this Court have recently clarified the test for "excusable neglect." In Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 113 S. Ct. 1489 (1993), the Court held that a creditor's filing of a proof of claim 20 days late constituted excusable neglect under Federal Rule of Bankruptcy Procedure 9006(b)(1). Looking to other rules for guidance, the Court stated that, "at least for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." Id. at 394, 113 S. Ct. at 1497. The Court explained that the determination of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," and identified four factors to guide courts in making that determination:

6

"the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. at 395, 113 S. Ct. at 1498. The Court found that in the case before it the creditor had engaged in excusable neglect, because "the lack of any prejudice to the debtor or to the interests of efficient judicial administration, combined with the good faith of respondents and their counsel, weigh[ed] strongly in favor of permitting the tardy claim." Id. at 398, 113 S. Ct. at 1499.

Three years later, this Court applied the Pioneer factors in Cheney v. Anchor Glass Container Corp., 71 F.3d 848 (11th Cir. 1996). In Cheney, the plaintiff exercised his right to demand a trial de novo following an arbitration award, but filed his request six days after the deadline had passed and three days after the district court had entered judgment against him. See id. at 849. We held that the district court had abused its discretion by refusing to set aside its judgment, because the Pioneer factors weighed in Cheney's favor. See id. at 850. Noting that the Supreme Court had "accorded primary importance to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration in determining whether the district court had abused its discretion," we relied on the

7

fact that Anchor Glass could not show it had suffered any prejudice and we found the six-day delay had no adverse impact on the district court. Id. In addition, we explained that the delay was caused by a miscommunication between two attorneys, which constituted "negligence" and "simply an innocent oversight by counsel." Id. Finally, we emphasized that there was no evidence Cheney had acted in bad faith. See id.

Pioneer and Cheney directly control the outcome of this case, and all four factors weigh in favor of Walter's position. First, in its memorandum opposing Walter's motion to set aside the dismissal, Blue Cross of Wisconsin admitted that it had not suffered any prejudice from Walter's delay. Second, although the delay of one month in this case[3] is longer than the delay in Cheney, there is no reason to believe allowing Walter to file the untimely response would have had an adverse impact on the district court or its resources. Third, the reason for the delay was the failure of a former secretary of Walter's attorney to record the applicable deadline – the type of "innocent oversight" involved in Cheney. See 71 F.3d at 850; see

_____

[3] Blue Cross of Wisconsin argues that Walter filed her response more than two months late, but its calculation measures the deadline from the date Walter filed her application for an extension of time. We assume Walter still had 20 days from the date the court granted the extension, even though the court granted the extension more than one month after the original deadline had passed. Walter submitted her response approximately one month after that 20-day period expired, making her response late by one month, not two.

8

also <u>Advanced Estimating Sys., Inc. v. Riney</u>, 130 F.3d 996, 999 (11th Cir. 1997) (miscommunication or clerical error constitutes excusable neglect; attorney's failure to understand plain language of a rule does not). Finally, Blue Cross concedes that Walter did not act in bad faith.

Blue Cross of Wisconsin makes two arguments in support of its contention that the district court properly refused to set aside its order of dismissal. First, Blue Cross argues that the neglect was not excusable, because the entire delay was not caused by the secretary's negligence. Although Walter's attorney admitted she learned of the pending motion to dismiss when she received the court's denial of her motion to remand in late September, the deadline for responding to the motion to dismiss had already passed at that point. Walter's response was untimely because of the secretary's negligence, and the two additional weeks of delay attributable to counsel do not change the undisputed facts that Blue Cross suffered no prejudice from the delay and that Walter did not act in bad faith.

Second, Blue Cross of Wisconsin argues that forgiving the untimeliness of Walter's response will adversely affect the judicial system by fostering disrespect for local rules. Because Blue Cross has conceded that neither Walter nor her counsel was acting in bad faith, it is not clear that saving Walter from this "innocent oversight by counsel" fosters disrespect for any rules. Even if it would,

9

the Pioneer and Cheney decisions compel the conclusion we reach.  The district

court should have set aside its order of dismissal based upon Walter's failure to

respond in a timely fashion to Blue Cross' motion to dismiss.

## B.  DID THE DISTRICT COURT HAVE JURISDICTION OVER BLUE CROSS OF WISCONSIN?

The district court did not reach the underlying question of whether it had

personal jurisdiction over Blue Cross of Wisconsin, a Wisconsin corporation.  Both

parties urge us to decide that issue as well, in the interest of judicial efficiency and

to avoid further  delay.  Because the parties have been heard on the issue, the

record is complete on it, and our  review of the district court's decision would be

de novo anyway, we will decide the issue ourselves instead of remanding it for

decision by the district court in the first instance. See Macklin v. Singletary, 24

F.3d 1307, 1311-13 (11th Cir. 1994) (optimal circumstance for court of appeals to

decide an issue the district court did not reach is where the standard of review is

de novo, the record is complete, and the parties have had an opportunity to address

the issue).

"The determination of  personal  jurisdiction over a nonresident defendant

requires a two-part analysis.  First, we consider the jurisdictional question under

the state long-arm statute.  If there is a basis for the assertion of personal

10

jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990) (internal citations and quotation marks omitted).  Walter bears the burden of establishing that the district court had jurisdiction over Blue Cross of Wisconsin.  See Familia De Boom v. Arosa Mercantil, S.A., 629 F.2d 1134, 1138 (5th Cir. 1980) ("The burden is on the plaintiff to establish jurisdiction when challenged by the defendant.").

Florida law contains a  long-arm statute, known as the Unauthorized Insurers Process Law, specifically  designed to subject out-of-state insurers who are unauthorized to do business in Florida to the jurisdiction of the Florida courts in defined circumstances.  See Fla. Stat. Ann. § 626.901 et seq. (West 1996 & Supp. 1999).  "The purpose of the Unauthorized Insurers Process Law is to subject certain insurers and persons representing or aiding such insurers to the jurisdiction of the courts of this state in suits by or on behalf of insureds or beneficiaries under insurance contracts."  Fla. Stat. Ann. § 626.905 (West 1996).  The statute  lists a number of acts which may subject an unauthorized insurer to the jurisdiction of the Florida courts by allowing substituted service of process:

11

> Any of the following acts in this state, effected by mail or otherwise, by an unauthorized foreign insurer, alien insurer, or person representing or aiding such an insurer is equivalent to and shall constitute an appointment by such insurer or person representing or aiding such insurer of the Insurance Commissioner and Treasurer, and his or her successor or successors in office, to be its true and lawful attorney, upon whom may be served all lawful process in any action, suit, or proceeding instituted by or on behalf of an insured or beneficiary, arising out of any such contract of insurance; and any such act shall be signification of the insurer's or person's agreement that such service of process is of the same legal force and validity as personal service of process in this state upon such insurer or person representing or aiding such insurer:
>
> (1) The issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein;
> (2) The solicitation of applications for such contracts;
> (3) The collection of premiums, membership fees, assessments, or other considerations for such contracts; or
> (4) Any other transaction of insurance.

Fla. Stat. Ann. § 626.906 (West 1996 & Supp. 1999).  The reach of this statute is, of course, a question of Florida law.  See Madara, 916 F.2d at 1514.

Walter argues that the district court had jurisdiction over Blue Cross of Wisconsin under § 626.906, because Blue Cross  collected  premiums sent from Florida  and made payments to health care providers in Florida for almost thirty years.[4]  Blue Cross  responds that the Walters received their insurance policy while

---

[4] Florida law also contains a general long-arm statute listing acts which subject a person to the jurisdiction of the Florida courts.  See Fla. Stat. Ann. § 48.193 (West 1994 & Supp. 1999).  We need not address Blue Cross of Wisconsin's argument that Walter did not establish jurisdiction under that

they lived in Wisconsin, and the third party administrator agreement it operates under prohibits Blue Cross from terminating the Walters' policy because they moved to Florida.

Florida cases interpreting § 626.906 focus on whether a nonresident insurer made a deliberate and voluntary choice to do business in Florida. For example, a nonresident insurer is not subject to suit in Florida simply because an insured paid premiums from Florida. See Kanawha Ins. Co. v. Morrison, 394 So.2d 1147, 1147 (Fla. Dist. Ct. App. 1981) ("Payment of premiums for life insurance by mail from Florida to a foreign insurer is...insufficient to justify in personam jurisdiction over the foreign insurer."); Parliament Life Ins. Co. v. Eglin Nat'l Bank, 333 So.2d 517, 518 (Fla. Dist. Ct. App. 1976) (premium payments by insureds who moved to Florida did not establish jurisdiction). For personal jurisdiction to attach, the insurer must issue or deliver the original policy in Florida, see Kanawha, 394 So.2d at 1147 (limiting jurisdiction under § 626.906 to cases "where the insurance contract is entered into or delivered in the State of Florida"), or reissue or amend the policy after the insured has moved to Florida. See First Georgia Ins. Co. v. Lloyd, 557 So.2d 138, 138 (Fla. Dist. Ct. App. 1990) ("With knowledge that the

statute, however, because Walter did not assert it as a basis for jurisdiction in the district court or in this Court.

insured had become a Florida resident, the insurer increased its coverage on the insured automobile, and collected a premium for the additional coverage. That was sufficient to establish jurisdiction...."); Citizens Ins. Co. of Am. v. Bowman, 525 So.2d 991, 991 (Fla. Dist. Ct. App. 1988) ("[T]he insurer's act of reissuing the policy to a known Florida resident...is an act which subjects the company to the jurisdiction of the Florida court."). This principle does not apply, however, if the renewal or extension is compelled by law. See Bookman v. KAH Incorporated, Inc., 614 So.2d 1180, 1182-83 (Fla. Dist. Ct. App. 1993) (no personal jurisdiction where renewal was compelled by COBRA).

In this case, the Walters received their insurance policy from Blue Cross of Wisconsin while they were in Wisconsin and were residents there. After they moved to Florida, Blue Cross of Wisconsin continued to collect premiums and pay claims, but it never reissued or amended the policy. Blue Cross could not terminate the Walters' policy, even after they had moved to Florida. Thus, under Florida law, the district court did not have personal jurisdiction over Blue Cross.

Walter argues that this case cannot be distinguished from Springer v. Blue Cross & Blue Shield of Florida, Inc., 695 So.2d 944 (Fla. Dist. Ct. App. 1997), a case in which Florida courts were held to have personal jurisdiction over an out-of-state insurer who had accepted premiums and paid claims in Florida for ten

years. But that is not all the insurer in <u>Springer</u> had done; it had also issued the insured an amended policy after she moved to Florida. <u>See</u> <u>id</u>. at 946-47 ("Under <u>Lloyd</u> and <u>Bowman</u>, Blue Cross' 1994 issuance of its amended policy to appellant in Florida, and subsequent collection of premiums, are sufficient contacts with Florida to subject it to suit in this forum under [§ 626.906]."). By contrast, Walter does not contend that Blue Cross of Wisconsin renewed or amended the policy after she and her husband moved to Florida. The <u>Springer</u> court did not address the situation we have in this case, and instead explicitly stated it would not decide whether merely receiving premiums and making payments for ten years was enough to confer jurisdiction over the insurer. <u>See</u> <u>id.</u> at 946.

Walter argues that the district court had jurisdiction over Blue Cross under § 626.906(3), which explicitly lists the collection of premiums as an act that subjects a foreign insurer to suit in Florida, and § 626.906(4), which covers "[a]ny other transaction of insurance." Florida courts, however, have limited the application of § 626.906 to insurance policies issued or delivered in Florida. <u>See</u> <u>Bookman</u>, 614 So.2d at 1182 ("[T]he statute only applies to policies held by Florida residents which are issued and delivered to them in Florida."); <u>Kanawha</u>, 394 So.2d at 1147 (limiting § 626.906(3) "to a situation where the insurance contract is entered into

15

or delivered in the State of Florida").[5] We adopted a similar limitation for an earlier version of § 626.906. See Parmalee v. Iowa State Traveling Men's Ass'n, 206 F.2d 518, 522 (5th Cir. 1953) ("We construe the legislation to apply only to policies of insurance delivered in Florida to Florida residents."). Thus, an out-of-state insurer cannot be haled into Florida court under § 626.906 simply because it accepts premiums from Florida on an insurance policy issued and delivered in another state. See Kanawha, 394 So.2d at 1147; Parliament, 333 So.2d at 518.

Because we conclude that the district court did not have jurisdiction over Blue Cross of Wisconsin under § 626.906, we need not determine whether it had sufficient minimum contacts with Florida to satisfy the Due Process Clause. Blue Cross of Wisconsin's motion to dismiss for lack of personal jurisdiction is due to be granted on that basis instead of for reasons having to do with the untimeliness of the opposition to that motion.[6]

---

[5] Although a later Florida decision applied § 626.906(4) to an insurance policy held by a non-resident, that case did not question the requirement that the policy be issued or delivered in Florida. See Winterthur Int'l, Ltd. v. Palacios, 559 So.2d 1214, 1215-16 (Fla. Dist. Ct. App. 1990) (policy issued in Florida).

[6] Because we conclude that the district court did not have jurisdiction over Blue Cross of Wisconsin, we need not address Blue Cross of Wisconsin's argument that, as third-party administrator of a state health plan, it was not a proper party.

16

## IV. CONCLUSION

For the foregoing reasons, we VACATE the district court's judgment dismissing this case for failure to file a timely motion in opposition to the motion to dismiss, and REMAND the case to the district court with instructions to dismiss the case for lack of jurisdiction. The new judgment should specify that the dismissal is without prejudice to Walter's pursuit of the same or related causes of action in a court which has jurisdiction over Blue Cross of Wisconsin.