[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 07-11908
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 17, 2009
THOMAS K. KAHN

D. C. Docket No. 03-01500-CV-BE-S

IN RE: HEALTHSOUTH CORPORATION SECURITIES LITIGATION

LEAD PLAINTIFFS, Central States Group and
New Mexico Group for Stockholder Litigation and
Retirement Systems of Alabama for Bondholder Litigation,

Plaintiff-Appellee,

AIG GLOBAL INVESTMENT CORPORATION,

Plaintiff-Appellant,

versus

HEALTHSOUTH CORPORATION,
Corporate defendant in Master Litigation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(June 17, 2009)

Before MARCUS, ANDERSON and CUDAHY,* Circuit Judges.
_____
        *  Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit,
sitting by designation.

PER CURIAM:

This appeal arises from a $445 million partial settlement between Appellees, Lead Plaintiffs and Defendant HealthSouth Corporation (the "Settling Parties"), in the HealthSouth Corporation ("HealthSouth") securities fraud class action.[1] AIG Global Investment Corporation ("AIG Global"),[2] an unnamed member of the settling bondholder class,[3] appeals the district court's denial of its untimely request to opt out of the bondholder class and the denial of its motion for reconsideration.

AIG Global mounts several arguments to support its position that the district court erred, which arguments we discuss in turn below. Responding to AIG Global's appeal, the Settling Parties contend that this Court does not have jurisdiction to hear this appeal, and that AIG Global does not have standing to bring this appeal.

We hold that we do have jurisdiction over this appeal and that AIG Global does have standing to bring this appeal. We also hold that the district court did not abuse its discretion in denying AIG Global's untimely opt-out request or denying its motion for reconsideration. Accordingly, we affirm.

---

[1] We sua sponte sever this appeal from Richard M. Scrushy's appeal of the Partial Final Judgment on an unrelated issue, appeal number 07-10701.

[2] AIG Global is a wholly owned subsidiary of American International Group, Inc.

[3] The class members are divided into a bondholder class and a stockholder class.

## I.  FACTS

This appeal stems from the HealthSouth securities fraud litigation.  In March of 2003, HealthSouth acknowledged that its previous financial statements had substantially overstated its income and assets.  In response, HealthSouth investors filed several class actions against HealthSouth alleging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934.  In July of 2003, these actions were consolidated in the Northern District of Alabama, and separate bondholder and stockholder classes were established.  AIG Global is an unnamed member of the bondholder class.

After years of litigation, the Settling Parties agreed to a Partial Settlement valued at $445 million in cash, HealthSouth stock, and HealthSouth warrants.  On September 26, 2006, the Settling Parties filed a Stipulation of Partial Settlement with the district court providing for certification of the class for settlement purposes, establishing a settlement fund, and releasing claims by all members participating in the settlement.  The Stipulation included a "blow provision," granting HealthSouth the opportunity to withdraw from the proposed settlement if a certain undisclosed number of class members opted out of the Partial Settlement.[4]  If the threshold of

---

[4]  The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.

opt outs was met to trigger the blow provision, then HealthSouth would have until January 4, 2007 to exercise its right to terminate the Partial Settlement.

On October 2, 2006, the district court entered a preliminary order approving the Partial Settlement. The preliminary order certified the stockholder and bondholder classes for settlement purposes, approved the terms of the Stipulation, and authorized publication of the Class Notice. The preliminary order established December 8, 2006 as the deadline for filing objections and for opting out of the class. In addition, the preliminary order scheduled the fairness hearing for final approval for January 8, 2007.

The preliminary order approved the form and content of the Class Notice. The district court determined that the requirements for class notice under Rule 23 were met and the notice comprised the "best notice practicable under the circumstances." The Settling Parties were required to make reasonable efforts to identify all class members and have notice mailed to them by October 23, 2006. In addition, the Settling Parties were required to publish the Summary Notice by November 6, 2006, in The Wall Street Journal and Investor's Business Daily.

AIG Global had purchased approximately $180 million of HealthSouth debt securities during the class period. Despite AIG Global's significant HealthSouth holdings and its apparent desire to opt out of the settling bondholder class, AIG

4

Global failed to meet the December 8, 2006 deadline for opting out of the class. Instead, on Friday January 5, 2007—the day after the blow provision expired and three days before the fairness hearing—the district court received a letter from American International Group, Inc. ("AIG") requesting permission to opt out of the settlement because AIG Global allegedly did not receive notice of the Partial Settlement. On January 8, 2007, at the fairness hearing, the district court heard oral argument on AIG Global's motion to enlarge the time permitting it to opt out of the settlement class.

On January 11, 2007, the district court denied AIG Global's untimely request to opt out of the settlement class. The district court determined that AIG had both actual and constructive notice of the opt-out deadline. The district court noted that AIG received at least 12 copies of the Class Notice in addition to publication in national editions of prominent business publications. Furthermore, the district court noted that AIG's counsel had been in close communication with HealthSouth's counsel regarding the existence of the Partial Settlement, but AIG Global failed to exercise due diligence and meet the opt-out deadline. In addition, the district court noted that allowing AIG Global's untimely opt-out request would result in great prejudice to the Settling Parties because AIG Global's $180 million in bonds could have potentially triggered the blow provision allowing HealthSouth to terminate the

settlement, but HealthSouth's deadline to exercise the termination option had passed.

AIG Global filed a motion to reconsider the Partial Final Judgment based in part on the fact that the Settlement Agreement and the Class Notice did not include the preliminary Plan of Allocation containing an Exclusion Date that made 65% of AIG Global's securities ineligible for recovery. The preliminary Plan of Allocation was part of a supplemental agreement for establishing the threshold for triggering the blow provision. AIG Global argues that the Class Notice was invalid because the Settling Parties concealed the Exclusion Date. AIG Global contends that it should be allowed to opt out or that a second opt-out opportunity should be granted after the class is notified of the final Plan of Allocation. The Class Notice stated that the Plan of Allocation would be submitted at a later time and that parties would have an opportunity to object to the fairness of the Plan at a later hearing.

The district court denied AIG Global's motion for reconsideration because it found that AIG Global had adequate notice of the class settlement. The district court determined that the Class Notice did not have to include the preliminary Plan of Allocation because the Plan was in fact preliminary and dependent on ongoing negotiations with the Securities and Exchange Commission ("SEC") to obtain additional money for the class. Furthermore, the Class Notice informed class

members that the Plan of Allocation would be submitted later, and class members had the choice of opting out if they did not want to join the class because the Plan of Allocation had not yet been submitted. Furthermore, the preliminary Plan of Allocation was created to calculate the blow provision, which is traditionally concealed and not included in the Class Notice. AIG Global appeals the Partial Final Judgment and the Reconsideration Order.[5]

## II. STANDARD OF REVIEW

Whether the district court erred in denying an untimely opt-out request is reviewed under an abuse of discretion standard. Grilli v. Metro. Life Ins. Co., 78 F.3d 1533, 1538 (11th Cir. 1996). We review the district court's excusable neglect decisions for an abuse of discretion. Advanced Estimating Sys., Inc. v. Riney, 77 F.3d 1322, 1325 (11th Cir. 1996). The district court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo. Wexler v. Anderson, 452 F.3d 1226, 1230 (11th Cir. 2006).

A district court's denial of a motion for reconsideration is reviewed for an abuse of discretion. Corwin v. Walt Dinsey Co., 475 F.3d 1239, 1254 (11th Cir.

---

[5] Final Plans of Allocation were eventually submitted and approved determining allocation of the Partial Settlement of the class action and the SEC's $100 million disgorgement fund. AIG Global was the only class member that attempted to opt out of the Partial Settlement and the only class member that objected to the fairness of the Plan of Allocation. The district court determined that the Plan of Allocation was fair. AIG Global appealed that decision also, but later dismissed its appeal.

2007). This Court's review of the Class Notice is limited to whether the district court abused its discretion in approving the Notice. In re Corrugated Container Antitrust Litig., 643 F.2d 195, 224 (5th Cir. 1981);[6] cf. Christo v. Padgett, 223 F.3d 1324, 1335 (11th Cir. 2000) ("We review an approval of a settlement agreement under the abuse of discretion standard.").

## III. DISCUSSION

A.    Jurisdictional questions

As a preliminary matter, we must address three jurisdictional questions that were carried with the case: (1) whether the March 22, 2007 order denying AIG Global's motion for reconsideration is immediately appealable; (2) whether AIG Global has perfected a timely appeal of the January 11, 2007 Partial Final Judgment; and (3) whether AIG Global has standing to appeal.

This Court has jurisdiction to hear this appeal because the district court's denial of AIG Global's untimely opt-out request was a properly certified final order under Rule 54(b) of the Federal Rules of Civil Procedure.[7] The Settling Parties contend that the Partial Final Judgment did not resolve AIG Global's claims against

---

[6]    This Court adopted as binding precedent all decisions of the former Fifth Circuit prior to October 1, 1981. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[7]    We also hold that the notice of appeal was timely.

8

HealthSouth because the district court had not yet ruled on a final Plan of Allocation. However, the Partial Final Judgment did resolve several claims; in particular, it conclusively determined that AIG Global was a class member and could not bring separate claims against HealthSouth. Cf. Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1388 n.29 (11th Cir. 1998) (en banc) (noting that a final judgment supporting review of a class certification decision could arise pursuant to a Rule 54(b) certification). The ultimate distribution—and AIG Global's share as a class member—of the $445 million settlement under the final Plan of Allocation has no bearing on whether AIG Global was improperly denied the right to opt out of the class and pursue claims separately.[8] The Partial Final Judgment, including the denial of AIG Global's untimely opt-out request, was a final order and was properly certified under Rule 54(b).

AIG Global has standing to appeal the denial of its untimely request to opt out of the settlement class. As a matter of common sense, AIG Global is the only party that could appeal the district court's denial of its untimely request to opt out of the class. The Supreme Court has held that the right of unnamed class members to appeal a settlement does not raise jurisdictional or standing issues because class

---

[8]     The Plan of Allocation has since been submitted to, and approved by, the district court, but it had not been submitted at the time of this appeal. AIG Global was not given a second opportunity to opt out, and its objections to the Plan of Allocation were rejected.

members have sufficient interest to meet the requirements of injury, causation, and redressability, and unnamed class members are bound by the judgment. Devlin v. Scardelletti, 536 U.S. 1, 6-7, 122 S. Ct. 2005, 2009 (2002). The fact that AIG Global's opt-out request was untimely does not eliminate AIG Global's standing to appeal the denial of the untimely request. AIG Global requested additional time to opt out because it allegedly did not receive timely notice. AIG Global has standing to have this Court determine whether the district court erred in finding that AIG Global received actual or constructive notice and in denying its motion for reconsideration.[9]

B.     The district court's denial of AIG Global's opt out

AIG Global made several challenges to the district court's denial of its untimely opt-out request and motion for reconsideration. First, AIG Global contends that the district court clearly erred in determining that AIG Global had actual and constructive notice of the settlement. The district court found that AIG Global had actual notice because it received at least 12 copies of the Class Notice through its affiliates and other entities. Furthermore, the district court found that AIG Global had constructive notice because summary notice was published in several prominent newspapers, and AIG Global's counsel was in regular contact

---

[9]     Accordingly, all jurisdictional challenges are rejected.

with HealthSouth's counsel about the settlement. The district court's findings that AIG Global had actual and constructive notice were not clearly erroneous.

Second, AIG Global contends that the district should have enlarged its opt-out time due to excusable neglect. Excusable neglect is an equitable determination that requires an examination into whether the moving party had a good reason for not responding timely and whether the opposing party would be prejudiced. In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1297 (11th Cir. 2003); see also Walter v. Blue Cross & Blue Shield United of Wis., 181 F.3d 1198, 1201 (11th Cir. 1999) (listing the relevant factors as (1) the danger of prejudice, (2) the length of delay and its potential impact on the proceedings, (3) the reason for the delay, and (4) whether the movant acted in good faith). The district court determined that the Settling Parties would have been prejudiced because AIG Global's holdings could have been sufficient to trigger the blow provision—allowing HealthSouth to terminate the settlement—but AIG Global attempted to opt out after the deadline had passed for HealthSouth to terminate the Settlement. The district court's finding that the Settling Parties would have been prejudiced was not clearly erroneous. Furthermore, AIG Global did not have a good reason for failing to timely opt out. AIG Global is a sophisticated party with extensive holdings at issue in this litigation, and counsel's failure to opt out before the deadline was inexcusable. The

11

district court did not abuse its discretion in refusing to extend AIG Global's time to opt out.

Finally, AIG Global contends that the Class Notice was defective for failing to include the preliminary Plan of Allocation containing an Exclusion Date that excluded 65% of AIG Global's holdings from recovery.[10] AIG Global contends that the Private Securities Litigation Reform Act ("PSLRA") and Rule 23 of the Federal Rules of Civil Procedure require the disclosure of the Plan of Allocation and the Exclusion Date in the Class Notice. See 15 U.S.C. § 78u-4(a)(5) (allowing filings under seal of the terms and provisions of settlement agreements only when good cause has been shown because "publication of a term or provision of a settlement agreement would cause direct and substantial harm to any party"); Fed. R. Civ. P. 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal."). Rule 23 requires the court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice to class members must "contain

---

[10] AIG Global has acknowledged that it had every intention of opting out of the class well in advance of the allegedly defective Class Notice and before it was aware of the Exclusion Date. AIG Global is attempting to circumvent its original failure to comply with the opt-out deadline while admitting that it had every intention of opting out without any regard for the eventual Plan of Allocation.

12

information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." Twigg v. Sears, Roebuck & Co., 153 F.3d 1222, 1227 (11th Cir. 1998) (quoting In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1105 (5th Cir. 1977).

The district court had reasonable grounds to withhold the preliminary Plan of Allocation from the Class Notice. The Plan of Allocation was preliminary—the final Plan of Allocation was dependent on other ongoing negotiations—and portions of the Plan were necessarily confidential to avoid revealing details about the blow provision.[11] Although the Exclusion Date did not need to be kept confidential to conceal the blow provision, we cannot conclude that the district court abused its discretion. The Class Notice expressly informed class members that the Plan of Allocation would be determined at a later date. If AIG Global, or any other class member, needed to obtain the Plan of Allocation before agreeing to participate in the settlement, then AIG Global could have opted out based on the Settling Parties failure to finalize the Plan of Allocation prior to the Class Notice.[12] Furthermore, it

---

[11] The Supplemental Agreement containing the blow provision was identified to the district court in the Stipulation of Partial Settlement, meeting the requirement of Rule 23(e)(3) that the Settling Parties identify agreements made in connection with the settlement.

[12] AIG Global's alternative argument that it should be given an additional opportunity to opt out, under Rule 23(e)(4), after submission of the final Plan of Allocation is without merit because Rule 23(e)(4) addresses a different situation and the decision is wholly within the discretion of the district court. See Fed. R. Civ. P. 23(e)(4) (addressing a situation in

was common knowledge, and AIG Global was fully aware, that bonds held past the Exclusion Date had rebounded in value;[13] therefore, it should have been obvious to AIG Global that little or no allocation would be made for those bonds.[14] The district court complied with the PSLRA and Rule 23, and the district court did not abuse its discretion by approving the Class Notice.

The district court did not clearly err in finding that AIG Global had actual and constructive notice of the settlement, and the district court did not abuse its discretion in denying AIG Global's untimely opt out request and its motion for reconsideration.

## IV. CONCLUSION

Based on the foregoing, we affirm the district court's denial of AIG Global's untimely opt-out request and the denial of its motion for reconsideration.

---

which the class was certified prior to approval of a settlement and stating that "the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so") (emphasis added).

[13]    Lead Plaintiffs request that this Court take judicial notice of a chart showing that the bonds at issue – i.e., the 65% of AIG Global's bonds for which no recovery was had because of the Exclusion Date – suffered no loss because the value of the bonds had rebounded by the time of the Exclusion Date. We need not take judicial notice of the chart because we are able to reach this conclusion without referring to the chart.

[14]    AIG Global's argument that it did not receive consideration for the release of its claims is wholly without merit because, under the settlement, AIG Global is entitled to recovery for the 35% of its holdings that suffered losses.

14

AFFIRMED.