884 So.2d 233 (2004)
EAST-EUROPEAN INSURANCE COMPANY and Alfa Insurance PLC, Appellants,
v.
Victor K. BORDEN, Barnhardt Marine Insurance, Inc. and Ocean Insurance Management, Inc., Appellees.
No. 2D03-5145.
District Court of Appeal of Florida, Second District.
August 6, 2004.
Rehearing Denied September 21, 2004.
Steven L. Brannock, Paul Parrish, and Maegen E. Peek of Holland & Knight LLP, Tampa, for Appellants.
Nathaniel G.W. Pieper of Lau, Lane, Pieper, Conley & McCreadie, P.A., Tampa, for Appellee, Victor K. Borden.
David W. Henry and Barbara Rudolph Smith of Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A., Orlando, for Appellee, Barnhardt Marine Insurance, Inc.
*234 John Bond Atkinson and Rebecca A. Brownell of Rumberger, Kirk & Caldwell, P.A., Miami, for Appellee, Ocean Insurance Management, Inc.
FULMER, Judge.
East-European Insurance Company, now known as Alfa Insurance PLC, (collectively referred to herein as Alfa) appeals an order denying its motion to quash service of process in which Alfa asserted that the Florida court did not have personal jurisdiction over Alfa, a Russian corporation. We agree with this assertion and reverse.
The underlying litigation from which this appeal arises began when Victor Borden, a resident of Honduras, made an insurance claim against Alfa for the loss of one of his fishing vessels that sank in international waters. Alfa became the insurer for the vessel after being contacted by 2K Shipping and Trading Limited (2K), an insurance brokerage firm located in Turkey. As it turned out, 2K was the fifth link in a chain of brokers seeking coverage for Borden's vessels. The originating broker, Ocean Insurance Management, Inc. (Ocean), a Florida corporation, was contacted by Borden's daughter who was seeking to obtain marine insurance for three fishing vessels on behalf of her father. Ocean contacted Barnhardt Marine Insurance, Inc. (Barnhardt), also a Florida corporation, which in turn contacted Marine Insurance Consultants International (MICI), a brokerage firm located in Britain, which in turn contacted Southern Seas (UK) Ltd. (Southern Seas), also a brokerage firm located in Britain, which in turn contacted 2K in Turkey, which in turn contacted Alfa, a Russian corporation located in Moscow. Eventually, a policy was issued by Alfa in Russia and sent to 2K in Turkey to be sent down the line to the insured, Borden.
On or about December 17, 2001, one of Borden's vessels sank. Borden filed a claim, but Alfa denied coverage because the vessel sank in international waters outside of the coverage area. Borden filed suit against Alfa and also against Ocean, Barnhardt, and Southern Seas. Southern Seas was dropped as a defendant in the amended complaint. In response to Borden's initial claim, Alfa filed a motion to quash service of process and a renewed motion to quash in response to the amended complaint. In its motion, Alfa asserted by affidavit that it does no business in the state of Florida and has no contacts with the state. No office, no employees, no mailing address, no telephone listing, no real or personal property (owned or leased), no agent for service of process, no advertising or marketing, no bank account, and no business records are located in Florida. Alfa does not now insure, nor has it ever insured, any Florida resident or property. And, Alfa has no salesmen, representatives, dealers, franchises, jobbers, wholesalers, distributors, brokers, or agents of any nature in the state of Florida.
In their written responses to Alfa's motion to quash, Borden and Ocean argued that service of process was appropriate under Florida's Unauthorized Insurer's Process Law (UIPL), section 626.906, Florida Statutes (2000), citing Winterthur International Ltd. v. Palacios, 559 So.2d 1214 (Fla. 3d DCA 1990). Alfa argued that the UIPL may only be invoked by Florida residents and Borden is not a Florida resident. Further, Alfa argued that Winterthur is inconsistent with other UIPL jurisprudence and is also distinguishable on its facts. The trial court held a hearing on the motion to quash and subsequently issued an order in which it concluded that Borden "has satisfied the requirements for in personam jurisdiction" *235 and denied Alfa's motion without specifying the basis upon which it rested its ruling.
We review issues of personal jurisdiction over foreign corporations de novo. See Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd., 752 So.2d 582, 584 (Fla. 2000); Camp Illahee Investors, Inc. v. Blackman, 870 So.2d 80 (Fla. 2d DCA 2003). The determination of whether the trial court has personal jurisdiction over Alfa turns on whether there are sufficient jurisdictional facts to show the applicability of a Florida long-arm statute and, if so, whether Alfa has sufficient minimum contacts with Florida to satisfy constitutional due process requirements. See Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989).
On appeal, Borden and Ocean continue to argue that service of process is appropriate under the UIPL. Barnhardt presents the same argument.[1] Alfa likewise maintains its position that the UIPL is available only to Florida residents and that the exercise of jurisdiction over Alfa pursuant to the UIPL would violate the Due Process Clause of the U.S. Constitution.
The UIPL allows for service of process on an unauthorized foreign insurance company if the insurer engages in any of the following acts:
(1) The issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein;
(2) The solicitation of applications for such contracts;
(3) The collection of premiums, membership fees, assessments, or other considerations for such contracts; or
(4) Any other transaction of insurance.
§ 626.906.
Borden cannot establish long-arm jurisdiction under subsections 626.906(1), (2), or (3) because, on their face, these sections are available only to Florida residents. See Drake v. Scharlau, 353 So.2d 961, 966 (Fla. 2d DCA 1978) (concluding that the fact that the insured was a resident of Florida, standing alone, was not sufficient to bring the foreign insurer within the purview of section 626.906 because insured was also required to show that the policy was issued and delivered in Florida); Am. Fire & Marine Ins. Co., Ltd. v. Eising, 673 So.2d 493, 494 (Fla. 4th DCA 1996) ("Substitute service on Florida's Insurance Commissioner is permitted under [the UIPL] where a foreign insurer has `by mail or otherwise' issued and delivered a contract of insurance to a resident of Florida."); Bookman v. KAH Incorporated, Inc., 614 So.2d 1180, 1182 (Fla. 1st DCA 1993) (stating that section 626.906 "only applies to policies held by Florida residents which are issued and delivered to them in Florida"); Hassneh Ins. Co. of Israel, Ltd. v. Plastigone Techs., Inc., 623 So.2d 1223, 1225 (Fla. 3d DCA 1993) (stating that section 626.906 applies only to insurers that issue policies "held by Florida residents which are issued and delivered to them in Florida"); Winterthur Int'l Ltd. v. Palacios, 559 So.2d 1214, 1215 (Fla. 3d DCA 1990) (stating that "subsections 626.906(1)-(3) apply only to residents of Florida"); Parliament Life Ins. Co. v. Eglin Nat'l Bank, 333 So.2d 517, 518 (Fla. 1st DCA 1976) (stating that section 626.906 requires "issuance or delivery of contracts of insurance to residents of this State").
*236 However, Borden, Ocean, and Barnhardt contend that Alfa engaged in activities that constitute a "transaction of insurance" under subsection (4) of the UIPL, and that subsection (4) provides a basis for longarm jurisdiction because it is not limited by a residency requirement.[2] In support of their argument, they rely on Winterthur, 559 So.2d 1214.
In Winterthur, the insured, Augusto Durand Palacios, was a resident of Peru who purchased a medical insurance policy from a Bermudan insurance company. While visiting Miami, Florida, Palacios purchased the policy from a Winterthur authorized broker who was located in and doing business for Winterthur in Miami. The policy was later delivered to Palacios in Peru. When Palacios sued Winterthur for coverage, Winterthur alleged that because Palacios was not a resident of Florida, he could not avail himself of section 626.906, Florida Statutes (1987).
The Third District rejected that argument. While the court readily agreed that subsections (1) through (3) of the UIPL applied to Florida residents only, the court concluded that subsection (4) did not contain such a limitation. 559 So.2d at 1215. The court based its decision on the fact that subsection (4) uses the language "transaction of insurance," which the court, citing to section 624.10, Florida Statutes (1987), stated is a defined term in the Florida Insurance Code. Id. at 1215. Section 624.10, provides:
"Transact" with respect to insurance includes any of the following, in addition to other applicable provisions of this code:
(1) Solicitation or inducement.
(2) Preliminary negotiations.
(3) Effectuation of a contract of insurance.
(4) Transaction of matters subsequent to effectuation of a contract of insurance and arising out of it.
The court noted that "[s]ection 624.10 is not limited, expressly or by implication, to transactions involving Florida residents" and concluded that subsection (4) of section 626.906 is therefore available to a nonresident insured. 559 So.2d at 1215. In response to the cases cited by Winterthur which contain language suggesting that section 626.906 applies only to Florida residents, the Third District observed that those decisions did not construe subsection 626.906(4) and concluded that, "as applied to subsection 626.906(4), those statements are dictum." Id. at 1216.
On its facts, we agree with the result in Winterthur because Winterthur, the insurer, had an authorized agent in Miami who solicited Florida insurance business. Thus, the court could have found jurisdiction under section 48.193, the general longarm statute, without reaching the issue of whether section 626.906(4) applied to non-residents. However, we disagree with the Winterthur analysis of section 626.906.
Our disagreement with the Third District's analysis of the statute rests in part on the same legislative intent that the Third District considered in denying Winterthur's motion for rehearing. See 559 So.2d at 1216-17. Based on our reading of the statute and the statement of legislative purpose, we conclude that the Florida legislature has expressly stated that section 626.906 (as a whole) was meant to protect Florida residents. See Reynolds v. State, 842 So.2d 46, 49 (Fla.2002) ("[I]t is well *237 settled that legislative intent is the polestar that guides a court's statutory construction analysis.").
The purpose statement codified by the legislature at section 626.905 states:
The purpose of the [UIPL] is to subject certain insurers and persons representing or aiding such insurers to the jurisdiction of courts of this state in suits by or on behalf of insureds or beneficiaries under insurance contracts. The Legislature declares that it is a subject of concern that many residents of this state hold policies of insurance issued or delivered in the state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies. In furtherance of such state interest, the Legislature herein provides a method of substituted service of process upon unauthorized insurers and persons representing or aiding such insurers, and declares that in so doing it exercises its power to protect its residents and to define, for the purpose of this chapter, what constitutes doing business in this state, and also exercises powers and privileges available to the state by virtue of Pub.L. No. 15, 79th Congress of the United States, chapter 20, 1st session, s. 340, as amended, which declares that the business of insurance and every person engaged therein shall be subject to the laws of the several states.
The former Fifth Circuit cited to this same purpose statement when it construed the entire UIPL as applying "only to policies of insurance delivered in Florida to Florida residents," finding that the statute's provisions are "restricted to suits `arising out of any such contract of insurance.'" Parmalee v. Iowa State Traveling Men's Ass'n, 206 F.2d 518, 522 (5th Cir. 1953). The court concluded that "[w]hile the statute refers to `any of the following acts[,'] we understand it to mean rather the doing of any of the prescribed acts from which results the issuance or delivery of a contract of insurance in the state." Id. at 522. The court recognized that "Florida has the power, within constitutional bounds, to prescribe the terms upon which insurance may be placed and kept in force upon its residents." Id. Thus, by applying the entire statute only to Florida residents, the statute "protects those for whom government has a legitimate concern." Id.
In Walter v. Blue Cross & Blue Shield United of Wisconsin, 181 F.3d 1198 (11th Cir.1999), the Eleventh Circuit called into question the soundness of Winterthur. In a footnote, the court cited to Winterthur noting that while the Winterthur court allowed section 626.906(4) to be used by a nonresident, the Winterthur court failed to "question the requirement that the policy be issued and delivered in Florida [to a Florida resident]." Walter, 181 F.3d at 1205 n. 5. In the text surrounding the footnote, the Walter court cites to Florida cases for the notion that to avail himself of section 626.906, the plaintiff must be a Florida resident who was issued and delivered an insurance policy in Florida. Id. at 1204-05.
Not only do we disagree with the Winterthur analysis of the UIPL's statement of the legislative purpose, we also question the court's reliance on section 624.10 of the Insurance Code. The Winterthur court used section 624.10 to separate subsection (4) of section 626.906 from the "contracts" issued and delivered in Florida to a Florida resident to which subsections (1)-(3) are clearly aimed. Such separation, the court believed, served to effectuate some other objective of the statute apart from the *238 protection of Florida residents. Winterthur, 559 So.2d at 1215. While the court purported to read various parts of the Insurance Code in pari materia, it is a well-settled principle of statutory construction that "all parts of a statute must be read together in order to achieve a consistent whole." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992). Further, a "`statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts.'" Jones v. ETS of New Orleans, Inc., 793 So.2d 912, 914-15 (Fla.2001) (quoting Acosta v. Richter, 671 So.2d 149, 153-54 (Fla.1996)). Subsections (1)-(3) place a residency limitation on the very activities that are encompassed within section 624.10's definition of "transact." To construe subsection (4) to include, without limitation, the same activities subject to the residency limitation of subsections (1)-(3) is to render subsections (1)-(3) meaningless.
Moreover, courts have a duty to "interpret a legislative Act so as to effect a constitutional result if it is possible to do so." Cassady v. Consol. Naval Stores Co., 119 So.2d 35, 37 (Fla.1960). Although our decision does not require us to address the constitutional issue, we believe that to construe section 626.906(4) as being available to nonresidents would broaden the statute's jurisdictional reach such that it would violate constitutional due process requirements, given the paucity of Alfa's contacts with Florida.
Subsequent to Winterthur, the Third District once again addressed the provisions of section 626.906 in Hassneh Insurance Co. of Israel, Ltd. v. Plastigone Technologies, Inc., 623 So.2d 1223 (Fla. 3d DCA 1993), and without acknowledging Winterthur, stated that section 626.906 applies only to insurers that issue policies "`held by Florida residents which are issued and delivered to them in Florida.'" 623 So.2d at 1225 (quoting Bookman, 614 So.2d at 1182, citing Parliament, 333 So.2d at 518). The court did not specify that only subsections (1) through (3) apply to Florida residents. Nor did the court draw distinctions between subsections. Instead, it made a blanket statement that the statute is available only to Florida residents whose insurance policies were issued and delivered in Florida. Hassneh, 623 So.2d at 1225. With this opinion, we agree.
For the reasons we have expressed, we hold that subsection (4) of section 626.906 is available only to Florida residents in the same manner as subsections (1), (2), and (3), and to the extent that this holding is in conflict with Winterthur, we certify conflict. Because Borden is not a Florida resident, we conclude that the Florida court did not have personal jurisdiction over Alfa and reverse the trial court's order denying Alfa's motion to quash service of process. Our determination that Borden did not establish jurisdiction under section 626.906(4) renders moot the remaining issues raised in this appeal.
We reverse and remand with directions to the trial court to grant Alfa's motion to quash and for further proceedings in accordance with this opinion. And, we certify conflict with Winterthur International Ltd. v. Palacios, 559 So.2d 1214 (Fla. 3d DCA 1990).
Reversed and remanded with directions. Conflict certified.
COVINGTON and WALLACE, JJ., concur.
NOTES
[1] Barnhardt also argues on appeal that jurisdiction is available under section 48.193, Florida Statutes (2000), Florida's general long-arm statute. This argument not only has no merit but also was not raised below and, therefore, is waived.
[2] Alfa argues that Borden's amended complaint fails to plead facts sufficient to create jurisdiction under subsection (4). We need not decide this issue because even if the allegations are sufficient, we conclude that section 626.906(4) applies only to Florida residents.