921 So.2d 587 (2006)
Victor K. BORDEN, et al., Petitioners,
v.
EAST-EUROPEAN INSURANCE COMPANY, et al., Respondents.
No. SC04-1737.
Supreme Court of Florida.
January 19, 2006.
*589 Nathan G.W. Pieper and David F. Pope of Lau, Lane, Pieper, Conley and McCreadie, P.A., Tampa, FL; John Bond Atkinson and Rebecca A. Brownell of Atkinson and Brownell, Miami, FL; David W. Henry and Barbara R. Smith of Allen, Dyer, Doppelt, Milbrath and Gilchrist, Orlando, FL, for Petitioners.
Steven L. Brannock, Paul Parrish and Maegen E. Peek of Holland and Knight, LLP, Tampa, FL, for Respondents.
PARIENTE, C.J.
We have for review the Second District Court of Appeal's decision in East-European Insurance Co. v. Borden, 884 So.2d 233 (Fla. 2d DCA 2004), which certified conflict with the Third District Court of Appeal's decision in Winterthur International Ltd. v. Palacios, 559 So.2d 1214 (Fla. 3d DCA), review dismissed, 564 So.2d 1088 (Fla.1990). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. The certified conflict involves an issue of statutory construction: whether as a matter of law section 626.906(4), Florida Statutes (2005),[1] of Florida's Unauthorized Insurer's Process Law (UIPL), which specifies the acts that will subject unauthorized foreign insurers to the jurisdiction of Florida courts, is available only to Florida residents. We conclude that the Second District in Borden correctly interpreted this statute, and hold that only Florida residents are entitled to utilize the provisions of section 626.906, including subsection (4), to obtain personal jurisdiction over an insurer who is not otherwise authorized to do business in Florida. We approve the decision reached in Borden and disapprove Winterthur.

FACTS AND PROCEDURAL HISTORY
This case arises out of an insurance claim filed by Victor Borden, a resident of Honduras, for the loss of one of his fishing vessels that sank in international waters. Through a chain of brokers, Borden obtained a marine insurance policy from *590 East-European Insurance Company and its successor, Alfa Insurance PLC (collectively referred to as "Alfa"), a Russian corporation. Borden's efforts to procure the insurance policy covering his three fishing vessels began when his daughter, who resides in Florida,[2] contacted Ocean Insurance Management, Inc. (Ocean), a Florida insurance brokerage firm. Ocean in turn contacted Barnhardt Marine Insurance, Inc. (Barnhardt), also a Florida insurance brokerage firm, which in turn contacted Marine Insurance Consultants International (MICI), an insurance brokerage firm located in Britain. MICI then contacted Southern Seas (UK) Limited (Southern Seas), also an insurance brokerage firm located in Britain. Southern Seas then contacted 2K Shipping & Trading Limited (2K), an insurance brokerage firm located in Turkey. 2K then contacted Alfa, which eventually issued an insurance policy.[3]
After the insurance policy was issued to Borden, one of the fishing vessels covered under the policy sank in international waters. Borden filed a claim with Alfa seeking to recover for the loss of this vessel. Alfa denied coverage on the basis that the vessel sank in international waters, outside the coverage area. Thereafter, Borden filed suit in Florida state court against Alfa, Ocean, Barnhardt, and Southern Seas. Borden later filed an amended complaint that dropped Southern Seas as a defendant. Barnhardt filed a notice of removal of the case to federal court to which Alfa, Barnhardt's codefendant, consented.[4] The case was removed to federal court but, based on Borden's unopposed motion, was remanded back to Florida state court.
Upon remand and before the filing of an answer, Alfa filed a motion to quash service of process for lack of personal jurisdiction in response to the initial complaint, and a renewed motion to quash service of process for lack of personal jurisdiction in response to the amended complaint. Alfa asserted by affidavit that Florida courts lacked personal jurisdiction over the insurer because Alfa did not have sufficient minimum contacts with Florida. Alfa also asserted that section 626.906(4) of the UIPL may be invoked only by Florida residents and is therefore unavailable to Borden as a resident of Honduras. In their written responses to Alfa's motion to quash, Borden, Barnhardt, and Ocean argued that service of process and personal jurisdiction were appropriate under section 626.906(4), relying on the Third District's decision in Winterthur. Barnhardt also asserted that Florida courts have personal jurisdiction over Alfa under Florida's general long-arm statute, section 48.193, Florida Statutes (2005). Specifically, Barnhardt argued that personal jurisdiction was available under section 48.193(1)(a), Florida Statutes (2005), based on Alfa's alleged contacts with Florida.
At the hearing on Alfa's motion to quash, the trial court ruled that Borden "ha[d] satisfied the requirements for in personam jurisdiction" and denied Alfa's *591 motion to quash. Borden, 884 So.2d at 234-35. On appeal, the Second District reversed. The Second District first addressed Barnhardt's assertion that Florida courts had personal jurisdiction over Alfa under sections 48.193(1)(a) and (1)(b), Florida Statutes (2005), and determined that this argument "not only has no merit but also was not raised below and, therefore, is waived." Id. at 235 n. 1. The Second District next addressed whether service of process and personal jurisdiction were available under section 626.906(4). The Second District concluded that section 626.906(4) applies only to claims brought against unauthorized foreign insurers by Florida residents. The Second District certified conflict with Winterthur, which held that section 626.906(4) applies to both residents and nonresidents.[5]

ANALYSIS
The certified conflict issue before this Court is whether as a matter of law section 626.906(4) of the UIPL is available only to Florida residents. This issue involves a question of statutory interpretation and thus is subject to de novo review. See B.Y. v. Dep't of Children & Families, 887 So.2d 1253, 1255 (Fla.2004). We begin our analysis by discussing the concepts of service of process and personal jurisdiction. We then explore the pertinent provisions in Florida's UIPL. Next, we review the interpretations of section 626.906(4) by the Third District in Winterthur and the Second District in this case. Finally, we discuss why, as a matter of law, section 626.906(4) is available only to Florida residents.

A. Personal Jurisdiction and Service of Process
Under Florida law, service of process and personal jurisdiction are two distinct but related concepts. Both are necessary before a defendant, either an individual or business entity, may be compelled to answer a claim brought in a court of law. Personal jurisdiction refers to whether the actions of an individual or business entity as set forth in the applicable statutes permit the court to exercise jurisdiction in a lawsuit brought against the individual or business entity in this state. See generally § 48.193; White v. Pepsico, Inc., 568 So.2d 886 (Fla.1990); Venetian Salami Co. v. Parthenais, 554 So.2d 499, 500 (Fla.1989) (stating that in order to subject a defendant to personal jurisdiction, "due process requires that the defendant have certain minimum contacts with the forum"). Service of process is the means of notifying a party of a legal claim and, when accomplished, enables the court to exercise jurisdiction over the defendant and proceed to judgment. See Shurman v. Atlantic Mortg. & Inv. Corp., 795 So.2d 952, 953 (Fla.2001) ("It is well settled that the fundamental purpose of service [of process] is `to give proper notice to the defendant in the case that he is answerable to the claim of plaintiff and, therefore, to vest jurisdiction in the court entertaining the controversy.'") (quoting State ex rel. Merritt v. Heffernan, 142 Fla. 496, 195 So. 145, 147 (Fla.1940)). Personal jurisdiction over a nonresident of the state is circumscribed by constitutional considerations of minimum contacts as stated in the seminal case *592 of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny.[6] As explained in Venetian Salami, two inquiries must be made regarding personal jurisdiction over a nonresident:
First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements.
554 So.2d at 502 (quoting Unger v. Publisher Entry Service, Inc., 513 So.2d 674, 675 (Fla. 5th DCA 1987)). Under Florida Rules of Civil Procedure 1.140(b)(2), (b)(4), and (b)(5), lack of jurisdiction over the person, insufficiency of process, and insufficiency of service of process are defenses that may be raised either in a responsive pleading or by motion.

B. Florida's Unauthorized Insurers Process Law
Chapter 626, Florida Statutes (2005), generally addresses foreign insurers who are unauthorized to do business in Florida. Sections 626.904 through 626.912 are collectively referred to as the "Unauthorized Insurers Process Law." § 626.904, Fla. Stat. (2005). Section 626.905 is entitled "Purpose of Unauthorized Insurers Process Law" and provides:
The purpose of the Unauthorized Insurers Process Law is to subject certain insurers and persons representing or aiding such insurers to the jurisdiction of courts of this state in suits by or on behalf of insureds or beneficiaries under insurance contracts. The Legislature declares that it is a subject of concern that many residents of this state hold policies of insurance issued or delivered in the state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies. In furtherance of such state interest, the Legislature herein provides a method of substituted service of process upon unauthorized insurers and persons representing or aiding such insurers, and declares that in so doing it exercises its power to protect its residents and to define, for the purpose of this chapter, what constitutes doing business in this state....
Section 626.906 specifies the acts which will subject unauthorized foreign insurers to the jurisdiction of Florida courts:
Any of the following acts in this state, effected by mail or otherwise, by an unauthorized foreign insurer, alien insurer, or person representing or aiding such an insurer is equivalent to and shall constitute an appointment by such insurer or person representing or aiding such insurer of the Chief Financial Officer to be its true and lawful attorney, upon *593 whom may be served all lawful process in any action, suit, or proceeding instituted by or on behalf of an insured or beneficiary, arising out of any such contract of insurance; and any such act shall be signification of the insurer's or person's agreement that such service of process is of the same legal force and validity as personal service of process in this state upon such insurer or person representing or aiding such insurer:
(1) The issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein;
(2) The solicitation of applications for such contracts;
(3) The collection of premiums, membership fees, assessments, or other considerations for such contracts; or
(4) Any other transaction of insurance.
The Legislature has defined the term "transact" as it relates to insurance to include any of the following:
(1) Solicitation or inducement.
(2) Preliminary negotiations.
(3) Effectuation of a contract of insurance.
(4) Transaction of matters subsequent to effectuation of a contract of insurance and arising out of it.
§ 624.10, Fla. Stat. (2005).
Section 626.907, Florida Statutes (2005), is entitled "Service of process; judgment by default," and specifies the procedure by which service of process is to be made for unauthorized foreign insurers subject to personal jurisdiction under section 626.906. Thus, collectively sections 626.906 and 626.907 allow a Florida court to effectuate service of process on and exercise personal jurisdiction over an unauthorized foreign insurer whenever the insurer engages in one of the acts enumerated in section 626.906. In fact, the United States Court of Appeals for the Eleventh Circuit has referred to the UIPL as a "long-arm statute... specifically designed to subject out-of-state insurers who are unauthorized to do business in Florida to the jurisdiction of the Florida courts." Walter v. Blue Cross & Blue Shield United of Wisconsin, 181 F.3d 1198, 1203 (11th Cir.1999). The court noted that "[t]he statute lists a number of acts which may subject an unauthorized insurer to the jurisdiction of the Florida courts by allowing substituted service of process." Id.; see also Bookman v. KAH Inc., 614 So.2d 1180, 1182 (Fla. 1st DCA 1993) (noting that the UIPL was enacted to subject certain insurers not authorized to do business in this state to Florida jurisdiction, and that the insurer's doing of an act enumerated in section 626.906 authorizes service of process on the Insurance Commissioner of Florida as the insurer's authorized agent).

C. Interpretation of Section 626.906(4), Florida Statutes (2005)
Among Florida's district courts, only the Second District in this case and the Third District in Winterthur have specifically construed subsection (4) of section 626.906 to determine whether this subsection is available to nonresidents.[7] In Winterthur, *594 the insured, who was a resident of Peru, obtained a medical insurance policy in Florida from Winterthur International, Ltd. (Winterthur). 559 So.2d at 1214-15. Winterthur was a Bermuda corporation that was not authorized to do business in Florida. See id. at 1215. The insured asserted that Florida courts had personal jurisdiction over Winterthur under section 626.906. See id. Winterthur argued, however, that section 626.906 is available only to an insured who is a Florida resident, and that Winterthur had not performed any acts that would bring it within the reach of the statute. See id. The Third District rejected the assertion that as a matter of law section 626.906(4) is limited to Florida residents, and held that "subsection 626.906(4) is available to a nonresident insured." 559 So.2d at 1215. The Third District observed that unlike subsections (1) through (3) of section 626.906, subsection (4) does not contain either an express or implied residency limitation. See id. at 1215.
The Third District noted that subsection (4) uses the term "transaction of insurance" to describe acts which subject an unauthorized foreign insurer to service of process and personal jurisdiction under the UIPL. See id. The Third District observed that the term "transact" with respect to insurance is statutorily defined in section 624.10 to include certain enumerated acts, but stated that this definition "is not limited, expressly or by implication, to transactions involving Florida residents." Id. The Third District concluded therefore that "no basis appears on which such a limitation should be implied" in section 626.906(4). Id.
On motion for rehearing, the Third District acknowledged that the protection of Florida residents is one of the objectives of the UIPL, but explained that this objective is not its sole purpose. See id. at 1216-17. Rather, the Third District determined that the UIPL has a broader statutory purpose in that it was enacted to subject unauthorized foreign insurers to the jurisdiction of Florida courts in suits brought by or on behalf of insureds or beneficiaries arising out of the insurer's business transactions in this state. See id. at 1217. The Third District concluded that applying section 626.906(4) to nonresidents is consistent with this broader purpose. See id.
Directly contrary to Winterthur, the Second District in this case held that "subsection (4) of section 626.906 is available only to Florida residents." Borden, 884 So.2d at 238. The Second District reasoned that the Legislature "has expressly stated that section 626.906 (as a whole) was meant to protect Florida residents." Id. at 236. In disagreeing with Winterthur's interpretation of section 626.906(4), the Second District explained that "[s]ubsections (1)-(3) place a residency limitation on the very activities that are encompassed within section 624.10's definition of `transact.'" Id. at 238. The Second District *595 concluded that to "construe subsection (4) to include, without limitation, the same activities subject to the residency limitation of subsections (1)-(3) is to render subsections (1)-(3) meaningless." Id. Further, the Second District noted that subsequent to Winterthur, the Third District in Hassneh Insurance Co. of Israel, Ltd. v. Plastigone Technologies, Inc., 623 So.2d 1223, 1225 (Fla. 3d DCA 1993), explicitly stated that section 626.906 "applies only to insurers that issue policies `held by Florida residents." (quoting Bookman). In Hassneh, the Third District failed to refer to or distinguish its previous decision in Winterthur.

D. Statutory Construction
Our task is to determine whether, based on the language of the statute, the Legislature intended to limit section 626.906(4) to Florida residents. It is a fundamental principle of statutory interpretation that legislative intent is the "polestar" that guides this Court's interpretation. See State v. J.M., 824 So.2d 105, 109 (Fla.2002); Reynolds v. State, 842 So.2d 46, 49 (Fla.2002). We endeavor to construe statutes to effectuate the intent of the Legislature. See White, 568 So.2d at 889. To discern legislative intent, we look "primarily" to the actual language used in the statute. See Golf Channel v. Jenkins, 752 So.2d 561, 564 (Fla.2000). Further, "[w]hen the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." Daniels v. Fla. Dep't of Health, 898 So.2d 61, 64 (Fla.2005).
Borden asserts that the ambiguity in this case occurs because subsection (4) of section 626.906 refers to "[a]ny other transaction of insurance." There is no question that subsections (1) through (3) of section 626.906 are available by their plain terms only to residents of the state. Subsection (1) specifically refers to "[t]he issuance or delivery of contracts of insurance to residents of this state" and subsections (2) and (3) refer to "such contracts." § 626.906(1)-(3), Fla. Stat. (2005) (emphasis supplied). Because subsection (4) does not refer to "such contracts," it is not clear whether subsection (4) is limited to Florida residents in the same manner as subsections (1) through (3). We therefore resort to principles of statutory construction. Cf. Blanton v. City of Pinellas Park, 887 So.2d 1224, 1230 (Fla.2004) (stating that only when statutory language is ambiguous will the Court resort to rules of statutory construction to discern legislative intent). To accept Borden's interpretation would require us to read subsection (4) as a freestanding provision. However, it is a well-settled principle of statutory construction that "all parts of a statute must be read together in order to achieve a consistent whole." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992) (emphasis omitted).
To construe subsection (4) to cover all transactions of insurance without regard to whether these transactions involve Florida residents or nonresidents would render subsections (1) through (3) of section 626.906 meaningless. It is also a basic rule of statutory construction that "the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless." State v. Goode, 830 So.2d 817, 824 (Fla.2002). As recognized by the Second District, section 624.10 encompasses some of the same transactions enumerated in subsections (1) through (3). For example, section 624.10, which provides section 626.906(4) with its definition of "transaction of insurance," includes within the definition of "transact" the solicitation *596 or inducement of an insurance policy, the effectuation of an insurance policy, and the transaction of matters subsequent to effectuation of the insurance policy and arising out of it. Similarly, subsections (1) through (3) refer to the issuance or delivery of an insurance policy; the solicitation of applications for an insurance policy; and the collection of premiums, membership fees, assessments, or other considerations for an insurance policy. § 626.906(1)-(3). It would be unnecessary for the Legislature to impose a residency requirement when service of process and personal jurisdiction are asserted under subsections (1) through (3) based on a foreign insurer's unauthorized acts if the insurer could be subject to service of process and personal jurisdiction under subsection (4) for engaging in these same acts even if the insured is not a Florida resident.
Reading section 626.906 as a whole, we conclude that subsection (4) was intended to operate not as a freestanding provision but rather to address "[a]ny other transaction of insurance" not covered under subsections (1) through (3). Therefore, the "transaction of insurance" to which subsection (4) applies should be interpreted to complement the acts that encompass subsections (1) through (3). Because subsections (1) through (3) are clearly available only to Florida residents, subsection (4) should be interpreted as being available only to Florida residents as well.
Further, the Legislature has clearly stated in section 626.905 that the "purpose" of the UIPL is to "protect" Florida residents because it is "a subject of concern that many residents of this state hold policies of insurance issued or delivered in the state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies." Thus, with regard to claims arising out of insurance policies issued in Florida by unauthorized foreign insurers, section 626.905 reflects legislative intent that the UIPL serve as a mechanism to protect Florida residents by providing for the litigation of these claims in this state. Construing section 626.906(4) as being available to nonresidents is not consistent with the Legislature's stated intent in section 626.905 to protect Florida residents through the UIPL. In addition, section 626.909(1), Florida Statutes (2005), specifically explains that the UIPL was enacted to fulfill the "obligation and duty of the state to protect its residents." (Emphasis supplied.)
In accord with the stated intent of the Legislature and statutory construction principles, we conclude that as a matter of law section 626.906(4) is available only to Florida residents. In this case, it is undisputed that Borden is not a Florida resident. Thus, Alfa is not subject to service of process and personal jurisdiction under section 626.906(4) because that statute is not available to Borden. Having concluded that section 626.906(4) is inapplicable in this case, we need not address the issue of whether exercising personal jurisdiction over Alfa violates constitutional due process requirements. Our resolution of the certified conflict issue renders the constitutional issue moot.[8]

*597 CONCLUSION
We hold that section 626.906(4) is available as a matter of law only in lawsuits brought against unauthorized foreign insurers by Florida residents. We approve the decision reached by the Second District in this case, and disapprove the Third District's decision in Winterthur.
It is so ordered.
WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The current version of section 626.906 is in all material respects the same as the 1987 and 2000 versions of the statute construed in Borden and Winterthur. The statute was amended in 2003 to change the authorized process agent. See ch.2003-261, § 1010, at 1986, Laws of Fla. Under the amended version of the statute, the Chief Financial Officer, not the Insurance Commissioner and Treasurer or his or her successor(s) in office, is the authorized process agent.
[2] In an affidavit filed in the trial court, Borden's daughter, Sylvia Borden, stated that she is her father's business manager. Her duties in this capacity include representing Borden and obtaining insurance coverage for Borden's fishing vessels.
[3] It is a disputed question of fact as to whether the applicable insurance policy in this case is the insurance policy prepared and issued by Alfa or a cover note prepared and issued by Barnhardt.
[4] "[T]he law is well settled that in cases involving multiple defendants all defendants must consent to the removal of a case to federal court." Russell Corp. v. Am. Home Assurance Co., 264 F.3d 1040, 1049 (11th Cir.2001).
[5] In addition to the issue of whether section 626.906(4) applies only to claims brought against unauthorized foreign insurers by Florida residents, Alfa raised the following two issues: whether Florida courts have specific jurisdiction over Alfa under section 626.906(4) and whether exercising jurisdiction would violate the constitutional principle of fair play and substantial justice. The Second District did not reach these remaining issues because the court determined that its conclusion that section 626.906(4) did not apply rendered these issues moot. See id. at 238.
[6] The United States Supreme Court's most recent pronouncements on the due process limitations of personal jurisdiction were in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), and Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In Rudzewicz, the Court noted that although "a forum legitimately may exercise personal jurisdiction over a nonresident who `purposefully directs' his activities toward forum residents," it reaffirmed its holding in International Shoe that "the constitutional touchstone remains whether the defendant purposefully established `minimum contacts' in the forum State." 471 U.S. at 473-74, 105 S.Ct. 2174. In Asahi, a plurality agreed that the substantial connection "between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." 480 U.S. at 112, 107 S.Ct. 1026 (plurality opinion).
[7] It is noteworthy that, although not specifically referring to subsection (4), all of the courts that have construed section 626.906 in its entirety have concluded that the statute is available only to insurance policies issued to Florida residents. See, e.g., Walter, 181 F.3d at 1204-05 (stating that section 626.906 is limited to insurance policies issued to Florida residents); Parmalee v. Iowa State Traveling Men's Ass'n, 206 F.2d 518, 522 (5th Cir. 1953) (same); American Fire & Marine Ins. Co. v. Eising, 673 So.2d 493, 494 (Fla. 4th DCA 1996) ("Substitute service on Florida's Insurance Commissioner is permitted under the Unauthorized Insurers Process Law where a foreign insurer has `by mail or otherwise' issued and delivered a contract of insurance to a resident of Florida.") (quoting section 626.906, Fla. Stat. (1995)); Shelter Mut. Ins. Co. v. Frederick, 654 So.2d 656, 659 (Fla. 5th DCA 1995) (concluding that presence in Florida of insured resident of another state when policy was renewed was insufficient to support in personam jurisdiction over insurer pursuant to sections 48.193 and 626.906); Bookman, 614 So.2d at 1182 (concluding that section 626.906 "only applies to policies held by Florida residents"); Drake v. Scharlau, 353 So.2d 961, 966 (Fla. 2d DCA 1978) (agreeing with precedent stating that section 626.906 is available "only to policies of insurance issued or delivered ... to Florida residents by an unauthorized foreign insurer"); Parliament Life Ins. Co. v. Eglin Nat'l Bank, 333 So.2d 517, 518 (Fla. 1st DCA 1976) (stating that section 626.906 requires "the issuance or delivery of contracts of insurance to residents of this State").
[8] We also decline to address Barnhardt's assertion that the Second District erred in determining that Barnhardt's argument that Alfa is subject to personal jurisdiction under section 48.193 has been waived and, if not waived, has no merit. This issue is beyond the scope of the certified conflict. See Kelly v. Community Hosp. of the Palm Beaches, 818 So.2d 469, 470 n. 1 (Fla.2002) (declining to address issues that were beyond the scope of the basis for the Court's conflict jurisdiction).