DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Appellant,

v.

**STAND UP MRI OF BOCA RATON, P.A.** a/a/o **MIKE RAMAZIO,**
Appellee.

No. 4D21-310

[May 26, 2021]

Appeal from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Reginald Roy Corlew, Judge; L.T. Case Nos. 2016SC8713 and 2019AP150.

Tracy T. Segal of Akerman LLP, West Palm Beach, and Marcy Levine Aldrich and Nancy A. Copperthwaite of Akerman LLP, Miami, for appellant.

Virginia M. Best and Johanna M. Menendez of Best & Menendez, Miami, for appellee.

PER CURIAM.

In this personal injury protection ("PIP") case, State Farm Mutual Automobile Insurance Company appeals a final summary judgment entered in favor of the plaintiff below, Stand-Up MRI of Boca Raton a/a/o Mike Ramazio ("Stand Up MRI"). We reverse, holding that the PIP statute does not preclude State Farm's method of calculating reimbursement.

Mike Ramazio had an automobile insurance policy with State Farm that provided mandatory PIP coverage. In June 2013, Ramazio was injured in an automobile accident. On June 30, 2013, Stand-Up MRI performed three MRIs on Ramazio in exchange for an assignment of Ramazio's PIP benefits. Stand-Up MRI billed State Farm a total of $4,800 ($1,600 for each MRI). State Farm paid a total of $2,551.16 for the three MRIs—$1,258.02 on one, $663.03 on the second, and $630.11 on the third. State Farm's payment was based upon 200% of the 2007 Medicare Part B fee schedule and application of the Medicare Multiple Procedure Payment Reduction ("MPPR").

Stand-Up MRI wrote State Farm, objecting to the MPPR reductions and demanding additional payment, claiming that it was owed an additional $779.16—$375.91 on one MRI and $403.25 for the other. Stand-Up MRI did not challenge the $1,258.02 reimbursement.

When State Farm failed to make additional payment, Stand-Up MRI, as assignee of Ramazio, filed a breach of contract action against State Farm, seeking unpaid PIP benefits under the Florida PIP statute and Ramazio's insurance policy. State Farm answered the complaint and denied liability.

The parties filed cross-motions for summary judgment.

After a summary judgment hearing, the trial court denied State Farm's motion and granted Stand Up MRI's motion. The court ruled that section 627.736(5)(a)2., Florida Statutes (2013), creates a floor for reimbursing benefits under a PIP claim. The court subsequently entered final judgment in favor of Stand Up MRI for $779.16 plus interest.

### *The PIP Statute Did Not Preclude State Farm's Method of Reimbursing the Three MRIs That Were Conducted on the Same Day*

Resolution of this case requires application of relevant portions of Florida's PIP statute as well as State Farm's policy. Before proceeding to the merits of the case, we first discuss the pertinent sections of Florida's PIP statute and State Farm's policy.

1. <u>Florida's PIP Statute</u>

Florida's Motor Vehicle No-Fault law provides for PIP benefits. *See* § 627.736, Fla. Stat. (2013). Over the years, the legislature has amended the PIP statute multiple times, with substantial amendments occurring in 2012.

In 2012, the legislature added language allowing insurers to apply Medicare coding policies and payment methodologies to determine reimbursement amounts:

> 3. Subparagraph 1. does not allow the insurer to apply any limitation on the number of treatments or other utilization limits that apply under Medicare or workers' compensation. An insurer that applies the allowable payment limitations of subparagraph 1. must reimburse a provider who lawfully provided care or treatment under the scope of his or her license, regardless of whether such provider is entitled to

2

reimbursement under Medicare due to restrictions or limitations on the types or discipline of health care providers who may be reimbursed for particular procedures or procedure codes. However, subparagraph 1. does not prohibit an insurer from using the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care if the coding policy or payment methodology does not constitute a utilization limit.

§ 627.736(5)(a)3., Fla. Stat. (2013). The legislature also added a notice provision requiring that insurers notify their policyholders at the time of issuance or renewal of the insurer's election to limit payment pursuant to the schedule of maximum charges:

> 5. Effective July 1, 2012, an insurer may limit payment as authorized by this paragraph only if the insurance policy includes a notice at the time of issuance or renewal that the insurer may limit payment pursuant to the schedule of charges specified in this paragraph. A policy form approved by the office satisfies this requirement. If a provider submits a charge for an amount less than the amount allowed under subparagraph 1., the insurer must pay the amount of the charge submitted.

§ 627.736(5)(a)5., Fla. Stat. (2013).

2. State Farm's Policy

The policy at issue in this case—policy booklet form 9810A— provides in pertinent part:

### *No-Fault Coverage*

**Insuring Agreement**

**We** will pay in accordance with the **No-Fault Act** properly billed and documented **reasonable charges** for **bodily injury** to an **insured** caused by an accident resulting from the ownership, maintenance, or use of a **motor vehicle** as follows:

**2. Medical Expenses**

*We* will pay 80% of properly billed and documented *medical expenses*, but only if that *insured* receives initial services and care from a provider described in A. below within 14 days after the *motor vehicle* accident that caused *bodily injury* to that *insured*.

***

**Limits**

3. *We* will not pay any charge that the *No-Fault Act* does not require *us* to pay, or the amount of any charge that exceeds the amount the *No-Fault Act* allows to be charged.

4. The most we will pay for each injured *insured* as a result of any one accident is $10,000 for all combined **Medical Expenses**, **Income Loss**, and **Replacement Services Loss** described in the **Insuring Agreement** of this policy's No-Fault Coverage.

***

**We** will limit payment of **Medical Expenses** described in the **Insuring Agreement** of this policy's No-Fault coverage to 80% of a properly billed and documented **reasonable charge**, but in no event will we pay more than 80% of the following No-Fault Act "schedule of maximum charges" including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers:

***

(f) For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

***

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies

throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

### 3. State Farm's Reimbursement to Stand-Up MRI

In this case, State Farm applied the MPPR to reduce the reimbursement amount paid to Stand-Up MRI. "MPPR is basically a payment methodology used by the Medicare program to reduce payment for medical services when two or more services have been rendered on the same day, to the same patient, by the same physician, in the same session." *State Farm Mut. Auto. Ins. Co. v. Millennium Radiology, LLC*, 27 Fla. L. Weekly Supp. 998a, 2019 WL 8301181, at *2 (Fla. 11th Cir. Ct. Feb. 8, 2019). The rationale behind the MPPR is that "[p]erforming all services in one session reduces time, labor, and general costs associated with performing multiple procedures." *Id.*

The MPPR provides that the service with the highest practice expense will be reimbursed at 100% and then any other services will be reimbursed at 50%. *See* Centers for Medicare & Medicaid Services, Medicare Learning Network, *MLN Matters*, No. MM8206 (Apr. 1, 2013), *available at* https://www.cms.gov/outreach-and-education/medicare-learning-network-mln/mlnmattersarticles/downloads/MM8206.pdf; *Fakhoury Med. & Chiro. Ctr., PLLC v. Progressive Am. Ins. Co.*, 27 Fla. L. Weekly Supp. 289a (Marion Cty. Ct. June 22, 2018).

Here, the trial court determined that regardless of whether State Farm was permitted to use the MPPR to reduce the reimbursement amount paid to Stand-Up MRI, it could not reimburse less than the allowable amount under the 2007 Medicare Part B schedule because both section 627.736(5)(a)2. and the policy at issue created a floor for reimbursing PIP benefits.

Neither the statute nor the policy at issue support such a conclusion.

"It is a fundamental principle of statutory interpretation that legislative intent is the 'polestar' that guides this Court's interpretation." *Borden v. E.-European Ins. Co.*, 921 So. 2d 587, 595 (Fla. 2006). "We endeavor to construe statutes to effectuate the intent of the Legislature." *Id.* "To discern legislative intent, we look 'primarily' to the actual language used in the statute." *Id.* "When the language of the statute is clear and

unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *Valencia Reserve Homeowners Ass'n v. Boynton Beach Assocs., XIX, LLLP*, 278 So. 3d 714, 717 (Fla. 4th DCA 2019) (citation omitted). "The court must give effect to all parts of the statute and avoid readings that would render a part thereof meaningless, and it must read all parts of a statute together in order to achieve a consistent whole." *Coastal Creek Condo. Ass'n v. Fla. Tr. Servs. LLC*, 275 So. 3d 836, 838–39 (Fla. 1st DCA 2019), *review denied*, SC19-1391, 2019 WL 6249333 (Fla. Nov. 22, 2019).

Section 627.736(5)(a)1. ("subparagraph 1") identifies different formulas for determining reimbursement under the schedule of maximum charges depending on the type of provider and the nature of the services. For the MRIs here at issue, the applicable portion of the schedule of maximum charges is section 627.736(5)(a)1.f.(I), Florida Statutes (2013), which requires insurers to pay 80% of 200% of the allowable amount under the participating physicians fee schedule of Medicare Part B:

> 1. The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:
>
> ***
>
> f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:
>
> (I) The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

§ 627.736(5)(a)1.f.(I), Fla. Stat. (2013).

Section 627.736(5)(a)2. ("subparagraph 2") addresses what fee schedule should be used when determining the allowable amount referenced in subparagraph 1:

> For purposes of subparagraph 1., the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment

limitation, *except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.*

§ 627.736(5)(a)2., Fla. Stat. (2013) (emphasis added).

Finally, section 627.736(5)(a)3. ("subparagraph 3") provides that insurers can use Medicare coding policies and payment methodologies, including applicable modifiers, to determine the appropriate amount of reimbursement:

> Subparagraph 1. does not allow the insurer to apply any limitation on the number of treatments or other utilization limits that apply under Medicare or workers' compensation. An insurer that applies the allowable payment limitations of subparagraph 1. must reimburse a provider who lawfully provided care or treatment under the scope of his or her license, regardless of whether such provider is entitled to reimbursement under Medicare due to restrictions or limitations on the types or discipline of health care providers who may be reimbursed for particular procedures or procedure codes. *However, subparagraph 1. does not prohibit an insurer from using the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care if the coding policy or payment methodology does not constitute a utilization limit.*

§ 627.736(5)(a)3., Fla. Stat. (2013) (emphasis added).

As written, subparagraph 2 does not modify or limit subparagraph 3, or vice versa, but instead they each separately address subparagraph 1. Subparagraph 2 focuses on what fee schedule should be used when determining the allowable amount referenced in subparagraph 1. Contrary to the county court's conclusion below, subparagraph 2 does not establish a "floor" for reimbursing PIP benefits. Instead, subparagraph 2 provides that the allowable amount in the 2007 Medicare Part B fee schedule must be used when it is higher than the applicable year's Medicare Part B fee schedule's allowable amount. After determining which fee schedule should be used pursuant to subparagraph 2, subparagraph 3 then provides that insurers can use Medicare coding policies and payment methodologies when determining the reimbursement amount.

7

There is no language in subparagraph 3 stating, or suggesting, that subparagraph 2 creates a limitation or restriction in the reimbursement amount.

As State Farm argues, the schedule of maximum charges is simply a base rate that may be adjusted downwards by applying Medicare coding policies and payment methodologies, such as the MPPR, to determine the appropriate amount of reimbursement. "[W]hile [subparagraph 2] establishes that the allowable amount in the 2007 Medicare Part B fee schedule must be used when it is higher than the applicable year's Medicare Part B fee schedule's allowable amount, [subparagraph 3] permits that allowable amount to then be reduced by the applicable and permissible Medicare coding policies and CMS payment methodologies when determining the amount of reimbursement for the claim." *State Farm Mut. Auto. Ins. Co. v. Pan Am Diagnostic Servs. Inc.*, 26 Fla. L. Weekly Supp. 466b, 2018 WL 10626018, at *3 (Fla. 17th Cir. Ct. Sept. 5, 2018); *see also Fountains Therapy Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 27 Fla. L. Weekly Supp. 755a (Broward Cty. Ct. Oct. 7, 2019) ("Subparagraph (2) clarifies what fee schedule should be used when determining the *allowable amount* referenced in subparagraph (1). Subparagraph (3) makes it clear that insurers can use Medicare coding policies and CMS payment methodologies when determining the *reimbursement amount*.").

Stand-Up MRI asserts that State Farm's interpretation would rewrite the plain language of the statute to "excise subparagraph 2 when subparagraph 3 applies" and violate various canons of statutory construction. However, State Farm's interpretation allows the subparagraphs to be read in harmony with one another, whereas the interpretation adopted by the trial court would rob subparagraph 3 of meaning. "Statutory construction requires that all subparagraphs must be given meaning, and if the Legislature had wanted the 2007 schedule of Medicare Part B to always be the floor for reimbursement, they could have added the same sentence from subparagraph 2 in all of the remaining subparagraphs (where it is absent)." *State Farm Mut. Auto. Ins. Co. v. Pan Am Diagnostic Servs. Inc.,* 26 Fla. L. Weekly Supp. 466b, 2018 WL 10626018, at *3 (Fla. 17th Cir. Ct. Sept. 5, 2018). *See also Fountains Therapy Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.,* 27 Fla. L. Weekly Supp. 755a (Broward Cty. Ct. Oct. 7, 2019) ("Had the legislature intended for insurers to only be permitted to use Medicare coding policies and CMS payment methodologies if the reimbursement amount equaled more than the allowable amount in Medicare Part B's 2007 fee schedule [i.e. subsection (2) created a prohibition on subsection (3)], the legislature could have drafted a provision that specifically stated so."). We read subparagraph 3 as permitting insurers to use Medicare coding policies and

payment methodologies, such as MPPR, to reduce the reimbursement amount for PIP benefits below the applicable amount under the 2007 Medicare Part B schedule.

Stand-Up MRI argued below—and the county court agreed—that State Farm's insurance policy also incorporated a floor for reimbursing PIP benefits, even if the MPPR is applied. "When 'interpreting an insurance contract,' this Court is 'bound by the plain meaning of the contract's text.'" *Geico Gen. Ins. Co. v. Virtual Imaging Servs., Inc.*, 141 So. 3d 147, 157 (Fla. 2013) (quoting *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569 (Fla. 2011)). "If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." *Id.* Any ambiguities are liberally construed in favor of the insured and strictly against the insurer as the drafter of the policy. *Chandler v. Geico Indem. Co.*, 78 So. 3d 1293, 1300 (Fla. 2011).

Although the policy language quoted above is formatted differently, it has the same effect as the language in section 627.736(5)(a). As Judge Di Pietro explained when interpreting identical policy language in *Plantation Open MRI, LLC v. State Farm Mutual Automobile Insurance Co.*, 25 Fla. L. Weekly Supp. 831a (Broward Cty. Ct. Nov. 3, 2017):

> [State Farm]'s policy states that it will not pay more than 80% of the schedule of maximum charges *including* the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services. While [State Farm]'s policy contains a directive for which fee schedule must be used, the directive does not override [State Farm]'s ability to then reduce that fee schedule's allowable amount through the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services. Therefore, the Court finds that [State Farm]'s Policy Form 9810A permitted [State Farm] to reimburse Plaintiff below the 2007 Medicare Part B fee schedule through the application of MPPR.

We conclude that neither the PIP statute, nor State Farm's policy, prohibit State Farm from applying the MPPR to reduce the reimbursement to an amount less than the allowable amount of the 2007 Medicare Part B fee schedule.

### State Farm's Policy Provides Adequate Notice of Its Intent to Use Medicare Coding Policies and Payment Methodologies, Such As the MPPR

Following the 2012 amendments to the PIP statute, section 627.736(5)(a)5., Florida Statutes (2013), requires that insurers notify their insureds at the time of policy issuance or renewal of the insurer's election to limit reimbursement pursuant to the fee schedules in the PIP statute:

> Effective July 1, 2012, an insurer may limit payment as authorized by this paragraph only if the insurance policy includes a notice at the time of issuance or renewal that the insurer may limit payment pursuant to the schedule of charges specified in this paragraph.

The statute provides that "[a] policy form approved by the office [of Insurance Regulation] satisfies this requirement." *Id.*

Stand-Up MRI acknowledges that the policy "seem[s] to have elected to utilize the permissive Medicare Part B fee schedule regarding the PIP schedule of maximum charges" but argues that the policy's reference to "Medicare coding policies and payment methodologies" does not give sufficient notice of State Farm's intent to apply the MPPR to reduce the reimbursement amount.

We agree with those circuit courts sitting in their appellate capacity which have determined that State Farm's policy language clearly and unambiguously elects the use of Medicare coding policies and payment methodologies, which include use of the MPPR, even if the policy does not specifically mention MPPR.

In *State Farm Mutual Insurance Company v. Millennium Radiology, LLC*, 26 Fla. L. Weekly Supp. 871a, 2019 WL 8375937 (Fla. 11th Cir. Ct. Jan. 9, 2019), the Eleventh Judicial Circuit Court, sitting in its appellate capacity, was faced with identical language in a State Farm insurance policy. Recognizing there was no binding case law regarding the application of MPPR to PIP claims where the policy does not specifically mention the term "MPPR," the court looked to a similar challenge to policy language in *Orthopedic Specialists v. Allstate Insurance Company*, 212 So. 3d 973 (Fla. 2017). There, the Florida Supreme Court concluded that the Allstate policy was clear and unambiguous in its election of the Medicare fee schedule, even though the policy did not specifically mention the term "Medicare" when it elected to utilize the Medicare fee schedule in the

payment of claims. *Millennium*, 26 Fla. L. Weekly Supp. 871a, 2019 WL 8375937, at *3 (Fla. 11th Cir. Ct. Jan. 9, 2019).

The *Millennium* court reasoned that "[i]f settled case law does not require an insurer to specify 'Medicare' in electing and notifying its insured of the use of the Medicare fee schedule, then it is presumably not required to specify the use of the term 'MPPR' in notifying the insured of the use of this particular Medicare payment methodology." *Id.* In determining that State Farm's policy language provided adequate notice of State Farm's intent to employ such a payment reduction, the *Millennium* court also noted that the policy tracked the language of the 2012 statutory amendment. *Id.*[1]

We hold that State Farm's policy provided sufficient "notice" of its intent to utilize "Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers," such as the MPPR.

---

[1] Since *Millennium* was decided, Florida courts have continued to conclude that State Farm's policy provides adequate notice under section 627.736(5)(a)5. *See State Farm Mut. Auto. Ins. Co. v. Millennium Radiology, LLC*, 27 Fla. L. Weekly Supp. 998a, 2019 WL 8301181, at *1 (Fla. 11th Cir. Ct. Feb. 8, 2019) ("This Appellate Court finds that the State Farm Policy clearly and unambiguously elects the use o[f] Medicare coding policies and payment methodologies, which includes utilization of the MPPR method."); *State Farm. Mut. Auto. Ins. Co. v. Pan Am Diagnostic Servs., Inc.,* 2019 WL 8375936, at *3 (Fla. 11th Cir. Ct. Mar. 1, 2019) ("We find the plain language of State Farm's Form 9810A PIP policy satisfies *Virtual Imaging*'s simple notice requirement and Form 9810A properly complies with the notice provision of section 627.736(5)(a)5, Florida Statutes (2012)."); *State Farm Mut. Auto. Ins. Co. v. Pan Am Diagnostic Servs. Inc.*, 2018 WL 10626018, at *4 (Fla. 17th Cir. Ct. Sept. 5, 2018) ("[T]he unambiguous language of Form 9810A PIP policy states that State Farm will be using the fee schedule of maximum charges and CMS coding polices and payment methodologies including applicable modifiers [MPPR] to determine reimbursement. We find that State Farm's Form 9810A PIP policy properly complies with the notice provision of section 627.736(5)(a)5, Florida Statutes (2013)"). It is also worth noting that State Farm's 9810A form policy has been approved by the Office of Insurance Regulation, which satisfies the notice requirement of section 627.736(5)(a)5. *See State Farm Mut. Auto. Ins. Co. v. Pan Am Diagnostic Servs. Inc.*, 2018 WL 10626018, at *4 (Fla. 17th Cir. Ct. Sept. 5, 2018) ("State Farm satisfied the 2013 statutory notice requirement of section 627.736(5)(a)5, Florida Statutes by having its Form 9810A PIP policy *approved* by the OIR. Thus, as a matter of law, State Farm's Form 9810A policy complied with section 627.736(5)(a)5, Florida Statutes.").

We reverse the summary final judgment and remand to the county court for the entry of a summary final judgment in favor of State Farm.

GROSS, GERBER and KLINGENSMITH, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***